Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
### for the
### District of Colorado

_____ Division

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
2:08 pm, Aug 12, 2024
**JEFFREY P. COLWELL, CLERK**

| | | |
|---|---|---|
| Destiny Keith Coleman | ) | Case No. _____ |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| **-v-** | ) | |
| | ) | |
| Janet L. Yellen, Secretary of the Treasury, | ) | |
| James J. Ridgell, Frank J Tisby, Jr, | ) | |
| Sidney R White | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## COMPLAINT FOR A CIVIL CASE

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Destiny Keith Coleman |
| Street Address | 2007 E 6TH ST |
| City and County | Pueblo, Pueblo County |
| State and Zip Code | Colorado 81001 |
| Telephone Number | 785-414-2277 |
| E-mail Address | 4DKColeman@gmail.com |

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

Name                                 Janet L. Yellen

Job or Title *(if known)*            Secretary of the Treasury

Street Address                       950 Pennsylvania Ave. NW

City and County                      Washington

State and Zip Code                   DC, 20530-0001

Telephone Number

E-mail Address *(if known)*

**Defendant No. 2**

Name                                 James Joseph Ridgell

Job or Title *(if known)*

Street Address                       7995 Mississippi Ave Apt B6

City and County                      Denver, Denver County

State and Zip Code                   Colorado, 80247

Telephone Number                     (720) 275-7871

E-mail Address *(if known)*          jbr523@yahoo.com

**Defendant No. 3**

Name                                 Frank J Tisby, Jr

Job or Title *(if known)*

Street Address                       27067 Irish Ave

City and County                      Aurora, Arapahoe County

State and Zip Code                   Colorado, 80016

Telephone Number                     (303) 513-7775

E-mail Address *(if known)*          stisby98@msn.com

**Defendant No. 4**

Name                                 Sidney R White

Job or Title *(if known)*

Street Address                       5052 Tucson Way

City and County                      Denver, Denver County

State and Zip Code                   Colorado, 80239

Telephone Number                     (303) 378-7399

E-mail Address *(if known)*          key49.kw@gmail.com

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✓] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 U.S.C. Sections 1983 and 1985
U.S. Constitution First Amendment
Title VII of the Civil Rights Act of 1964

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

The plaintiff, *(name)* _____ , is a citizen of the
State of *(name)* _____ .

    b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated
under the laws of the State of *(name)* _____ ,
and has its principal place of business in the State of *(name)*
_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of
the State of *(name)* _____ . Or is a citizen of
*(foreign nation)* _____ .

Page 3 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b.    If the defendant is a corporation

The defendant,  *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

SEE EXHIBIT A

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

SEE EXHIBIT A

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

---

V.    **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.    **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    August 12, 2024

Signature of Plaintiff    

Printed Name of Plaintiff    Destiny K. Coleman, Pro Se

B.    **For Attorneys**

Date of signing:    

Signature of Attorney    

Printed Name of Attorney    

Bar Number    

Name of Law Firm    

Street Address    

State and Zip Code    

Telephone Number    

E-mail Address

# EXHIBIT A

## JURISDICTION AND VENUE

1. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C.
Sections 1331, 1343, 1346(b1), and 2679(b)(c)(d). This Court has supplemental
jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367.

2. Venue is proper under 28 U.S.C. Section 1391 because all of the conduct
complained of occurred within this District.

## PARTIES

3. Destiny Keith Coleman ("Mr. Coleman" or "Plaintiff") began working for the
Internal Revenue Service ("IRS") as a Contact Representative ("CR") in April 2020 and
remains employed there to the current date at 1999 Broadway, Denver, CO 80202.

4. Janet L. Yellen, Secretary of the Treasury of the U.S. Department of the
Treasury ("Defendant US Treasury") is the national treasury and finance department of
the federal government of the United States, where it serves as an executive department.
The IRS is a bureau operating within the U.S. Department of the Treasury.  It acted in
concert with the other Defendants listed in this matter and under the color of state law.

5. James J. Ridgell ("Defendant Ridgell") is employed with the IRS and works as
a Supervisory Contact Representative at 1999 Broadway, Denver, CO 80202.  At all
times mentioned herein, he acted both on his own and at the direction of Defendant US
Treasury.  His actions against the Plaintiff were perpetrated under color of state law and
he is sued both in his official and individual capacities.

6. Frank Tisby, Jr. ("Defendant Tisby") is employed with the IRS and works as a
Program Manager at 1999 Broadway, Denver, CO 80202.  At all times mentioned
herein, he acted both on his own and at the direction of Defendant US Treasury.  His

actions against the Plaintiff were perpetrated under color of state law and he is sued

both in his official and individual capacities.

7.  Sidney White ("Defendant White") is employed with the IRS and works as a

Department Manager at 1999 Broadway, Denver, CO 80202.  At all times mentioned

herein, he acted both on his own and at the direction of Defendant US Treasury.  His

actions against the Plaintiff were perpetrated under color of state law and he is sued

both in his official and individual capacities.

## PROCEDURAL BACKGROUND

8.  The Plaintiff has exhausted his administrative remedies at the Equal

Employment Opportunity Commission ("EEOC") with respect to the allegations that

organization is authorized to consider.  A true and correct of the EEOC right to sue,

which Plaintiff received on July 15, 2024, is attached as Exhibit B.

9.  The Plaintiff has also exhausted his administrative remedies through the Step

Three Grievance procedure as established and agreed upon by the United States

Department of the Treasury and the National Treasury Employees Union ("NTEU").  A

true and correct copy is attached as Exhibit C.

## FACTUAL ALLEGATIONS

10.  From April 27, 2020, Mr. Coleman's hire date, to roughly March 2023, the

Plaintiff worked exclusively from his home residence with no office reporting

requirements.  Thereafter, Plaintiff was required to report to his Place of Duty ("POD")

at least twice during a pay period which essentially means that he should report to 1999

Broadway, Denver, CO 80202 once a week.  Plaintiff resides in Pueblo, CO which meant

that he was required to drive to Denver once a week.  The drive is approximately two

-2-

hours each way.

11. The Plaintiff works on what is called a "Tele-work" schedule meaning that he worked from home four days and reported to the POD one day during each work week.

12. Mr. Coleman is a disabled Marine Corps veteran with service-connected disabilities for posttraumatic stress disorder ("PTSD"), major depressive disorder ("MDD"), degenerative arthritis of the lumbar spine, and degenerative disc disease of the lumbar spine. With respect to the Plaintiff's physical disabilities, there is the onset of experience of pain, limited mobility, and near total incapacitation.

13. Each Defendant in this complaint has knowledge (or should have had knowledge) of Plaintiff's disability status. Upon hiring Mr. Coleman, Defendant US Treasury granted Plaintiff the *Veteran's Preference* based upon his mental health and physical disability status. Subsequent to Plaintiff's hiring, he applied for, was medically certified to, and approved to exercise rights under the Family Medical Leave Act of 1993 ("FMLA").

14. Mr. Coleman has medically prescribed work limitations associated with his disabilities. These are, 1.) Anxiety - mental health breaks, 2.) Basic Mobility - limit to 1 hour standing, 3.) Secondary Mobility - limit to twisting, bending and stooping, 4.) Physical Exertion - limited lifting to 25 pounds, and 5.) Driving - eliminate the requirement for driving for work due to medical problems attributed to the long commute.

15. In an effort to safeguard his health and to facilitate his ability to work over the long-term, on May 4, 2022, the Plaintiff filed a request for Reasonable Accommodation ("RA") with Defendant Ridgell, who was at that time Acting

Department Manger.  This was  because the driving activity was painful and would thus impair his ability to work.  The process of the request included providing medical certification as to the specific disabilities along with work limitations due to them.

16.  On November 25, 2022, Defendant Ridgell denied the request for RA and simply lied about his knowledge of Plaintiff's disability status to support of his decision. He indicated, on Form 13661, that, 1.) "Plaintiff's condition was not obvious or otherwise known to management" and 2.) that the Plaintiff had "no work limitations as a consequence of his disabilities".

17.  Defendant Ridgell would later contradict these false statements, in a sworn EEOC affidavit, on March 19, 2024, where he testified that he in fact had knowledge of Mr. Coleman's disabilities and the fact that Plaintiff suffered from anxiety as well.

18.  Immediately following Defendant Ridgell's denial of the RA, he made a series of negative entries to Mr. Coleman's Employee Personnel File ("EPF") on March 8, 2023, April 4, 2023, and April 18, 2023, falsely purporting that Plaintiff had failed to report to his POD and that, as a consequence, Defendant Ridgell threatened the Plaintiff that his Tele-work agreement would be terminated and that he would be required to report to the POD in Denver every work day.  The fact was that the Plaintiff did report to the POD on each instance.  On two instances Plaintiff left the POD exercising his rights under FMLA.  The third instance, Plaintiff left the POD on FMLA due to experiencing internal bleeding and had to go to the Veteran Affairs Medical Center ("VAMC") Emergency to be cared for.  Plaintiff is prescribed a medicine called Xarelto for a blood-clotting condition with internal bleeding as one of the potential dangerous side-effects.

19.  On April 18,2023, Mr. Coleman filed his first EEOC Complaint against

-4-

Defendant Ridgell for disability discrimination including denying Plaintiff's request for RA, and making false entries to Plaintiff's EPF.

20. That EEOC Complaint resulted in a settlement between Mr. Coleman and Defendant US Treasury on June 14, 2023. The settlement provided for a change in Mr. Coleman's POD from Denver to Colorado Springs which is a forty minute drive as opposed to a two hour drive from Plaintiff residence which substantially reduced Plaintiff's commute to work and limits time spent aggravating his spinal disabilities. The settlement also provided for a work-desk capable of adjusting from a sitting to a standing position along with an ergonomic desk chair which is supportive of Plaintiff's spine. Finally, the settlement provided for the removal of the three false entries made by Defendant Ridgell to Plaintiff's EPF.

21. The false entries set into Mr. Coleman's EPF along with the clearly documented misstatement of facts by Defendant Ridgell were all reversed and made to no effect by the Director of Kansas City Campus Collections Unit, Timothy Sherrill.

22. Having settled the EEOC Complaint dated April 18, 2023, Plaintiff provides the foregoing, in paragraphs 15 through 21, as background in an effort to demonstrate to the Court the behavior of Defendant Ridgell against Mr. Coleman during that time frame.

23. On April 6, 2023, Mr. Coleman was working at the Denver POD. One hour before the shift ended, Plaintiff fell ill experiencing the onset of sharp pains in his back and neck. He invoked his rights under FMLA, reporting to Defendant White in writing via email, on the Form OPM-71.

24. The Plaintiff, having fulfilled his obligation under the FMLA policy, which is,

to notify the employer by either written, oral, or electronic means (e.g., email), left the work place to make his way home.

25. That same day, Defendant White sent Plaintiff an email threatening him that, in the future, if Plaintiff did not wait for a special permission from Defendant White before leaving the workplace, Plaintiff would be charged with Absent Without Leave ("AWOL"). A charge of AWOL is very serious and results in disciplinary action up to and including termination of employment. Here, Defendant White is threatening Mr. Coleman with disciplinary action where there has been no violation of any policy.

26. The Plaintiff has always and without fail utilized email or telephone contact with a manager as a means of the invocation of his rights under FMLA. And, in this wise, Plaintiff has never been required to obtain any extra-permission from any specific manager. To Plaintiff's knowledge and belief, no other employee has been faced with threats of being charged with AWOL for a legitimate exercise of FMLA rights.

27. Mr. Coleman retrieved the email on the following day, April 7, 2023, and noticed in the email header that Defendant White had copied the threatening message to Defendant Ridgell who was acting Department Manager.

28. Mr. Coleman understood that the threat by Defendant White, while grave, was nevertheless contrary to stated FMLA policy. And, based upon Plaintiff's previous experiences of harassment and having his disability rights violated by Defendant Ridgell, Plaintiff believed and was afraid that Defendants White and Ridgell were conspiring against him to create a reason to unjustly punish him and/or terminate the Plaintiff from his job.

29. On December 27, 2023, the Plaintiff filed a Formal Grievance (Step Three

-6-

Grievance) with Defendant Tisby, the Program Manager, against the threat made by

Defendant White to charge Plaintiff with AWOL for exercising his rights under FMLA.

On March 14, 2024, Mr. Coleman received the response to the grievance (See Exhibit C).

Wherein, Defendant Tisby brushed the serious threat made by Defendant White aside.

Defendant Tisby came to the judgement that the threat was just a "reminder" not

withstanding the plain threatening language in the email.  Indeed, no reasonable person

would misconstrue the  threatening language employed in the email by Defendant White

as a mere reminder.

     30.  On August 21, 2023, Mr. Coleman received a work evaluation referred to as a

Contact Monitor ("CM") from Vivian Barrientos, a supervisory contact representative

("frontline manager").  The CM is a tool used by frontline managers to evaluate a CR's

work interactions over the telephone with taxpayers calling into the IRS.  It is utilized as

a means of training wherein the frontline manager can point out areas of strength as

well as weaknesses (errors) made to the CR.

     31.  When errors are identified, the frontline manager is required to measure the

CR's performance in line with established IRS policy.  In other words, performance is

measured objectively as opposed to subjectively.  This is intended ensure that feedback

is fair across all employees and not left to the whims or biases of any particular frontline

manager.  If the CR does not agree with any of the findings of the frontline manager,

he/she may discuss this with the manager.  If the CR does not agree with the finding of

the frontline manager, they may file a rebuttal with the Department Manager as per

policy.

     32.  Ultimately, the CM is used in the Annual Performance Rating and can affect a

CR's ability for promotion and/or awards. An accumulation of error reports can be used to terminate a CR's Tele-work agreement.

33. In this particular CM, the frontline manager assigned three (3) errors to Mr. Coleman. The Plaintiff requested a time for meeting with the frontline manager to dispute the findings. During about a 50 minute discussion with the frontline manager, the Plaintiff respectfully pointed out that of the 3 errors stated in the CM, as per policy, only one was correctly assigned. The manager conceded that in the two instances in controversy her conclusions were erroneous but she could not understand exactly "how" they were. As such, she decided that she would not reverse her course but instead advised that Plaintiff is free to file a rebuttal to the Department Manager. The Plaintiff preceded to do so.

34. On August 22, 2023, Mr. Coleman filed written rebuttal to the CM with Defendant Ridgell who, again, was acting Department Manager. The Plaintiff therein reiterated his disagreement with the two errors in controversy and opined that, in discussion with the frontline manager, her manner in equitably resolving the conflict was both unprofessional and contrary to stated policy.

35. On August 24, 2023, Defendant Ridgell responded to Plaintiff's rebuttal. Defendant Ridgell stated that he agreed, the two errors mentioned in Plaintiff's rebuttal were in fact assigned erroneously. But that, notwithstanding, they would remain as errors assigned to the Plaintiff. Defendant Ridgell further admonished Mr. Coleman that, Plaintiff did not have a right to an opinion in the rebuttal and that Plaintiffs statements were "irrelevant". Defendant Ridgell charged the Plaintiff with official misconduct making the misconduct report to Mr. Coleman's EPF.

36. The speech and opinions employed by the Plaintiff in the rebuttal to the CM constituted protected speech under the First Amendment to the United States Constitution. Mr. Coleman did not utilized any speech which could be construed as vulgar, threatening the safety of another, or otherwise obscene. The Plaintiff very simply stated his opinion and there is no law, no governmental agency, nor the whim of a federal employee which is able to subvert an American citizen's right to speak freely.

37. Defendant Ridgell arbitrarily charged Mr. Coleman with misconduct and input the same to Plaintiff's EPF without any articulable violation of IRS policy. Further, Defendant Tisby went along with the misconduct of his subordinate, Defendant Ridgell.

38. Mr. Coleman was devastated. Plaintiff could not believe that this was actually happening to him. Plaintiff responded immediately to Defendant Ridgell via email and copied in the Program Manager, Defendant Tisby, in the hopes that he would step in to stop what the Plaintiff could only perceive as absolute madness. Plaintiff expressed in no uncertain terms that he felt like the actions taken and statements made by Defendant Ridgell were degrading and dehumanizing. Mr. Coleman expressed to Defendant Ridgell that his actions and statements were in violation of Plaintiff's right to free speech. Plaintiff asks Defendant Ridgell to explain what he meant by what he was saying and doing.

39. Both Defendant Ridgell and Defendant Tisby ignored the Plaintiff's attempt to obtain some justification to what was taking place. Neither replied. Indeed, as Defendant Ridgell's superior, Defendant Tisby was sent a copy of the misconduct report set upon Mr. Coleman and decided to allow it to stand. Defendant Tisby stated that

Defendant Ridgell's actions were, "appropriate". And this, again, notwithstanding the fact that the Plaintiff had not violated any IRS policy.

40. On September 30, 2023, Defendant Ridgell was interviewed by Gloria Baker ("Ms. Baker"), an EEOC Counselor. Ms. Baker asked Defendant Ridgell would he remove the misconduct report from the Plaintiff's EPF? Ms. Baker reports that Defendant Ridgell replied that, "He is not removing the report and that it will remain in Plaintiff's EPF".

41. On January 8, 2024, Defendant White sent Mr. Coleman an email message channeled through another acting frontline manager, Harold Alexander, who is a visually impaired employee, in order to camouflage himself. The Plaintiff was able to see that Harold Alexander had received the message from Defendant White. The email included an attached Memorandum ("memo") that I was instructed to review, sign, and return to Harold Alexander.

42. The memo was set on the official US Treasury letterhead with the subject title of, "FORESEEABLE NEED FOR FMLA". There is no precedent for such a memo in the FMLA policy so the Plaintiff perceived this as another threatening action and form of intimidation with respect to his rights under FMLA.

43. Mr. Coleman replied to Harold Alexander requesting that the purpose of the memo be explained before Plaintiff would sign the same. Plaintiff also advised Harold Alexander that he would write to Patricia Allen, the Chapter 32 President of the National Treasury Employee Union ("NTEU"), for guidance on this strange document. No reply came from Harold Alexander but, instead, from Defendant White.

44. As a direct or proximate cause of Defendant White's action, Mr. Coleman was

embarrassed, humiliated, and fearful that Defendant White was attempting to rescind or otherwise curtail the Plaintiff's FMLA rights. This especially since, to the Plaintiff's knowledge, no other employee before him has been subjected to such a memo. Indeed, the NTEU Chapter 32 President expressed to Defendant White that the memo read like a threat and potentially an instrument of retaliation against Mr. Coleman for his prior protected activities in filing Formal Grievance against Defendant White's previous threat against Plaintiff with the charge of AWOL in the exercise of his FMLA rights and prior EEOC complaints against other managers.

45. The NTEU Chapter President advised Defendant White that his action was contrary to both the 2022 National Agreement and IRS policy.

46. As a direct or proximate cause of the cascading abuses and violations of the Plaintiff's rights by the Defendants, Plaintiff has suffered extreme anxiety, humiliation, and mental anguish. The Plaintiff has had to modify and increase his psychiatric medications along with psychotherapy.

## First Cause of Action

### 42 U.S. Code Section 1983 - Civil action for deprivation of rights
### (Against Defendant US Treasury and Defendant Ridgell)

47. Plaintiff hereby incorporates the preceding paragraphs as if fully restated herein and specifically paragraphs 15 through 21.

48. Defendant US Treasury provides, as of right, that a Contact Representative ("CR") may file written rebuttal to a Contact Monitor ("CM") wherein there is disagreement. Defendant Ridgell is a management employee acting on behalf of Defendant US Treasury.

-11-

49. On August 22, 2023, Mr. Coleman filed written rebuttal to a CM which was brought against him on August 21, 2023 by Vivian Barrientos, a frontline manager. The same was delivered to Defendant Ridgell who, at the time, was acting Department Manager.

50. In his rebuttal to Defendant Ridgell the Plaintiff wrote, in succinct part, "It appears to me that Mrs. Barrientos does not appreciate the gravity and impacts associated with negative evaluative errors that are simply not justified by IRM or else she just doesn't care enough to conduct herself professionally in this regard." Here, Mr. Coleman was clearly exercising his right under the First Amendment to the US Constitution to protected freedom of speech and expression.

51. But, on August 24, 2023, Defendant Ridgell, acting under color of state law, replied to Plaintiff's rebuttal in writing. He stated that he agreed with the Plaintiff that the larger part of the CM was charged the Plaintiff inappropriately but that, notwithstanding the fact the errors would stand. Here, Defendant Ridgell, was giving credence to erroneous information whereby the Plaintiff would be evaluated unfairly and without any justification. Further, Defendant Ridgell stated that the Plaintiff's observations were, "irrelevant" and that Plaintiff does not have a right to "an opinion".

52. Additionally, Defendant Ridgell charged Mr. Coleman with official misconduct and input negative information into the Plaintiff's Employee Personnel File ("EPF"). In an effort to substantiate the false charges and effectively quash the Plaintiff's right to freely express himself, Defendant Ridgell employed criteria which has nothing whatsoever to do with an employee's interactions with a manager.

53. The impact of such a misconduct report and the input of this negative

information to Mr. Coleman's EPF lowers his annual review rating score, hampers his
ability for promotion, and can disqualify the Plaintiff for any Annual Performance
Bonus.

54. The Plaintiff was horrified at the turn of events and the violation of his right
to free speech. Plaintiff immediately responded with an email to Defendant Ridgell
wherein he asked, "Am I not a human being, am I not an American citizen with a right to
free speech?" To which, Defendant Ridgell failed to reply.

55. Defendant Ridgell not only nullified the Plaintiff's right to free speech but he
maliciously punished Mr. Coleman for even exercising that right.

56. As a direct or proximate cause of the Defendant Ridgell's actions, the
Plaintiff's level of anxiety was so intense that he began to feel disorientated and detached
from reality. Plaintiff was so humiliated with a sense of extreme shame and distress that
his nose began to bleed. Plaintiff forthwith invoked his FMLA rights and left the
workplace.

57. At some point, later that evening, Plaintiff had an anxiety attack and fell into
a very deep depression. Over the coming days, Plaintiff's sense of life meaning and
self-worth suffered to such a degree that he began contemplating self-harm.

### Second Cause of Action

### 42 U.S. Code Section 1985 - Conspiracy to interfere with civil rights
### (Against Defendants US Treasury, Ridgell, and Tisby)

58. Plaintiff hereby incorporates the preceding paragraphs as if fully restated
herein and specifically paragraphs 15 through 21, and 30 through 40.

59. On August 24, 2023, Defendant Tisby was a Program Manager employed by

and acting on behalf of Defendant US Treasury. Defendant Tisby was the immediate

supervisor of Defendant Ridgell on the date that Defendant Ridgell undertook to violate

Mr. Coleman's right under the United States Constitution to Freedom of Speech.

60. Defendants US Treasury and Tisby, in addition to having full knowledge of

the actions taken by Defendant Ridgell against the Plaintiff, not only approved the

actions of the subordinate but, Defendant Tisby, stated that the actions were,

"appropriate". Defendant Tisby had the authority to stop the volatile actions of the

subordinate, Defendant Ridgell, but chose instead to be indifferent and not act. And,

thus, Defendant Tisby effectively conspired with Defendant Ridgell not only to violate

Mr. Coleman's right to freedom of speech and expression but to also punish him for

exercising that right.

61. As a direct or proximate cause of the Defendants US Treasury and Tisby,

acting in concert with Defendant Ridgell, the Plaintiff suffered extreme anxiety,

humiliation, and mental anguish.

### Third Cause of Action

### Title VII of the Civil Rights Act of 1964 - Retaliation & Harassment (Against Defendants US Treasury, Ridgell, White, and Tisby)

62. Plaintiff hereby incorporates the preceding paragraphs as if fully restated

herein and specifically paragraphs 15 through 21, and 30 through 46.

63. On May 4, 2022, Mr. Coleman filed a request for Reasonable

Accommodation ("RA") with Defendant Ridgell. The RA was filed on the basis of

Plaintiff's documented disabilities and is protected EEOC activity. Defendant Ridgell

denied the RA and concocted false statements of fact to support his denial. Additionally,

Defendant Ridgell made false entries into Mr. Coleman's EPF to the effect that the Plaintiff was in violation of IRS policy by not reporting to his Post of Duty ("POD") when in fact he had been reporting.

64. At that time, Defendant Ridgell demonstrated his malicious intent to not only deny Mr. Coleman the RA that he was medically certified to be granted but Defendant Ridgell sought to "paper" (meaning to unreasonably input false or derogatory information to the record) the Plaintiff's EPF with false, negative, and derogatory information.

65. Those efforts to undermine the Plaintiff's right to RA were all frustrated for Defendant Ridgell when, on June 14, 2023, Mr. Coleman's EEOC complaint was settled. The Plaintiff was granted the RA, based upon his obvious disabilities, and the false information that Defendant Ridgell had set into the Plaintiff's EPF were ordered removed.

66. Less than three months later, Defendant Ridgell again makes a concerted effort to not only "paper" Mr. Coleman's EPF with false misrepresentations of fact but also to deny his right to free speech and to punish the Plaintiff for the same.

67. There is a clear connection between the first round of attacks by Defendant Ridgell on the Plaintiff, after June 14, 2023, and his punishment and consequential violation of Mr. Coleman's substantive right to freedom of expression on August 24, 2023.

68. At all times, Defendant Ridgell acted under color of state law and as the representative and management employee of Defendant US Treasury.

69. It was about twelve days, before the final settlement of the EEOC complaint,

-15-

on April 6, 2023, that Defendant White threatened Mr. Coleman with a charge of AWOL
simply for exercising his right under the FMLA. Defendant White was a frontline
manager at the time and acting on behalf of Defendant US Treasury and under color of
state law.

70. At the same time that Defendant White sent the threatening email to Mr
Coleman, he also sent a copy to Defendant Ridgell. The Plaintiff believed that
Defendants White and Ridgell were ganging up on him in retaliation for the Plaintiff's
EEOC activity as well as an instant retaliation for Plaintiff's exercise of his FMLA rights.

71. On December 27, 2023, Mr. Coleman filed a Step Three Grievance with
Defendant Tisby complaining of the threat made against him by Defendant White.
Defendant Tisby, also acting under color of state law, did nothing. In fact, in his
response to the grievance, on March 14, 2024, Defendant Tisby turned the clear
threatening message into what he called, "a reminder" of FMLA policy. But, it is not
FMLA policy to threaten an employee while exercising his rights under FMLA with
AWOL.

72. As the Program Manager at the head of those under him, Defendant Tisby
had a duty to act with responsibility instead of indifference. And it is this lack of
appropriate oversight and accountability that has allowed the subordinate managers to
operate with, what appears to be, impunity.

73. The harassment seems to be without bounds an is interruptive of Mr.
Coleman even carrying out his regular work tasks. Part of the Plaintiff's duties at work
is to read and respond to important or urgent email messages. Like all other employees
Plaintiff must do this. All emails coming to the Plaintiff are work related and Mr.

-16-

Coleman does not receive any personal email over IRS servers. However on several

occasions, specifically on November 20, 2023, Defendant White directed Mr. Coleman

to "read and reply to email during his break or lunch times".

74. At another time previous to the above Mr. Coleman wrote to Defendant

Tisby, on August 30, 2023, in an effort to draw his attention to the harassment and to

receive some assistance complaining that Defendant White was attempting to have the

Plaintiff work through breaks and lunch in order to read and reply to emails. Defendant

Tisby ignored Mr. Coleman and never responded.

75. Plaintiff believes that no other employee has been tasked to work throughout

the workday with no break or lunch simply to satisfy what reasonably seems to be

harassment. Mr. Coleman responded to Defendant White that such a directive is a

violation of IRS policy and that Plaintiff would not use his free time in order to conduct

work.

76. The Defendants have created, for the Plaintiff, a work environment which is

toxic and hostile. Plaintiff believes that no reasonable person would be able to perceive

this in any other way. Of note, Mr. Coleman has done absolutely nothing wrong or in

violation to any IRS policy and yet, this is what he is faced with.

77. On January 8, 2024, Defendant White, in retaliation for the Step Three

Grievance that Plaintiff filed against him on December 27, 2023 for threatening Plaintiff

with a charge of AWOL for utilizing his FMLA rights, created a Memorandum ("memo")

especially designed to intimidate and harass Mr. Coleman in retaliation for his use of

FMLA rights. Defendant White directed the Plaintiff to sign the document and return it

to him through a third party. Defendant White's motivation in issuing the document

was obvious by the fact that he attempted to hide the fact that it originated from himself. Such a memo is completely outside of the realm of what is required for an employee to benefit from the FMLA policy. To the Plaintiff's knowledge and belief, no other employee was required to sign such a memo.

78.    Mr. Coleman sent a copy of the memo to Patricia Allen, the Chapter President of the National Treasury Employees Union ("NTEU") requesting her help with what Plaintiff viewed as continued harassment. The memo conveys the sense that the Plaintiff's FMLA rights were in jeopardy. The memo was completely uncalled for.

79.    Ms. Allen advised Plaintiff not to sign the document and then she sent a message to Defendant White challenging the purpose of such an unauthorized and unprecedented memo urging Defendant White to cease his harassment and intimidation of the Plaintiff. She also let Defendant White know that, such a memo is unheard of in the FMLA policy. Defendant White responded that, essentially, he could do what he wanted.

80.    Evidence of Defendant White's malicious intent can be observed through the deceptive path of the memo. He first prepared the memo at some yet unknown time set for the signature of Harold Alexander, his subordinate frontline manager, who is blind. Harold Alexander received the memo from Defendant White at 2:01PM on January 8, 2024 and sent the memo to the Plaintiff as if it originated from him (Alexander) at 2:38PM the same date; 37 minutes later. The bottom line is that Defendant White knew that what he was undertaking was wrong and yet tried to hide himself from it.

81.    The Defendants have established a continuous and malicious practice of singling out Mr. Coleman for harassment and other forms of retaliatory conduct against

-18-

the Plaintiff. At every instance, these actions have been based upon protected acts by

the Plaintiff and have been for inexplicable reasons by the Defendants, held to be in

violation of a policy which does not exist.

82. As a direct or proximate cause of the actions and/or inactions of all

defendants, Mr. Coleman has suffered intense levels of anxiety, humiliation,

bewilderment, and mental anguish.

## First State Cause of Action

### Colorado Revised Statues 13-25-124 - Libel and Slander (Defamation) (Against Defendants US Treasury and Ridgell)

83. Plaintiff hereby incorporates the preceding paragraphs as if fully restated

herein and specifically paragraphs 15 through 21, and 47 through 57.

84. Defendant Ridgell is a representative/management employee of Defendant

US Treasury and in all matters stated herein acted under color of state law.

85. Defendant Ridgell has demonstrated a proclivity for misrepresenting the

truth, lying, and making false statements where the Plaintiff is concerned. For example,

on November 25, 2022, Defendant Ridgell denied the Plaintiff's request for Reasonable

Accommodation ("RA") based upon Plaintiff's disabilities.

86. To facilitate that denial action, Defendant Ridgell stated that the Plaintiff's

disability conditions were "not obvious" and that management, "had no knowledge" of

the same. Defendant Ridgell further stated that the plaintiff had, "no work limitations

as a consequence of his disabilities".

87. However, in a sworn Equal Employment Opportunity Commission ("EEOC")

Investigative Affidavit dated March 19, 2024, Defendant Ridgell reversed course. He was

asked whether he was "aware" of whether the Plaintiff suffers from any medical
conditions or disability and he answered, "Yes, anxiety disorder, cervical and lumbar
spine related neck and back pain respectively".

88. Defendant Ridgell was asked, in the same affidavit, whether he had received
medical documentation relative to Mr. Coleman's disabilities. His answer was, "Yes".

89. Defendant Ridgell was asked whether the Plaintiff had any work limitations
or restrictions and here, he lied again. He stated that there were, "no work limitations".
At that, even though he knew, as a consequence of being in receipt of substantial
medical documentation to the contrary, that the Plaintiff in fact has several work
limitations related to his disabilities.

90. On March 8, 2023, April 4, 2023, and April 18, 2023, Defendant Ridgell
entered false statements in the Plaintiff's EPF. Each of those were subsequently
removed through an EEOC Final Settlement and his denial of the Plaintiff's RA was
there granted.

91. On August 22, 2023, the Plaintiff filed a "rebuttal" in dispute to an evaluation
rendered by his frontline manager (see paragraphs 30 through 40).

92. On August 24, 2023, Defendant Ridgell made an entry to Mr. Coleman's EPF
which contained false and otherwise negative information about the Plaintiff. The entry
charged that the Plaintiff, by his statement in the rebuttal, had violated IRS policy (see
paragraphs 30 through 40).

93. Defendant Ridgell knew or should have known that the entry was false. At
some point between August 22, 2023 and August 24, 2023, Defendant sent a copy of the
negative entry to Defendant Tisby. Defendant Ridgell, himself, doubted the validity of

-20-

the negative entry.

94.  On March 19, 2024, in a sworn EEOC Affidavit, Defendant Ridgell stated that he, "asked [the] Operations manager [Defendant Tisby] to review the verbiage [of the negative entry] prior to sharing it with the Complainant [Plaintiff]."

95.  Defendant Ridgell also sent a copy of the negative entry to Plaintiff's EPF to Harold Alexander, a frontline manager subordinate to the Defendant.

96.  While the Plaintiff contends that all of the negative charges input to his EPF are false, the charge brought by Defendant Ridgell that Plaintiff was in violation of the IRS policy around "Written Communication" is false on its face.

97.  The Written Communication criteria states fully that, "This individual performance critical job element describes how the employee promotes the satisfaction of taxpayers and customers through professionally and courteously identifying customers' needs and/or concerns and providing quality products and services. Communication to the customer is appropriate for the issue and encourages voluntary compliance."

98.  At issue, in Mr. Coleman's rebuttal, was his opinion of the frontline manager's conduct in his evaluation.  Defendant Ridgell, here, charges that the plaintiff was somehow in violation in a area dealing with interaction with a taxpayer/customer. No such interaction took place.

99.  The effect of Defendant Ridgell's actions, in falsely charging the Plaintiff in multiple areas of misconduct was to spread the negative implications across several areas of Mr. Coleman's rating criteria.

100.  Defendant Ridgell's actions caused immediate harm to the Plaintiff's

reputation which is demonstrated by the fact that Defendant Tisby, the Program

Manager at the time, agreed with Defendant Ridgell and allowed the negative and false

entry to be input to the Plaintiff's EPF.

101. As a direct or proximate cause of the actions of Defendants US Treasury and

Ridgell, the Plaintiff has suffered damage to his reputation in the workplace, the Plaintiff

has also had to increase the dosage of his mental health medications and has suffered

humiliation, embarrassment, and mental anguish.

### Second State Cause of Action

### Colorado Revised Statues Section 18-2-201 - Civil Conspiracy (Against Defendants US Treasury, Ridgell, and Tisby)

102. Plaintiff hereby incorporates the preceding paragraphs as if fully restated

herein and specifically paragraphs 47 through 57.

103. Defendants Ridgell and Tisby are representatives/management employees

of Defendant US Treasury and in all matters stated herein acted under color of state law.

104. Underlying this second state cause of action is the Plaintiff's first state cause

of action for defamation in that, Defendants US Treasury and Tisby conspired with

Defendant Ridgell to commit libel against Mr. Coleman by conspiring to make a false

entry to the Plaintiff's EPF.

105. On or about August 24, 2023, Defendant Ridgell sent a copy of the proposed

false entry to Defendant Tisby, his superior manager. On March 27, 2024, in a sworn

EEOC Affidavit, Defendant Tisby recalled receiving a copy of the false entry from

Defendant Ridgell. Defendant Tisby knew or should have known that the charges made

by Defendant Ridgell were not true. Yet, Defendant Tisby stated that, "After reviewing

-22-

the allegation, I determined the correct actions were taken by management." Defendant

Tisby joined with Defendant Ridgell and did not stop the action of entering the false

information to Mr. Coleman's EPF.

106. Defendant Tisby's deliberate indifference to the harm he would cause to the

Plaintiff constitutes an overt action in pursuance of the conspiracy to defame Mr.

Coleman.

107. As a direct or proximate cause of the actions of Defendants US Treasury and

Tisby, the Plaintiff has suffered damage to his reputation in the workplace and has

suffered humiliation, embarrassment, and mental anguish.

### Third State Cause of Action

### Colorado Revised Statues Section 24-34-401 Colorado Anti-Discrimination Act and SB 23-172 Protecting Opportunities and Workers' rights (POWR) Act
### (Against Defendants US Treasury and White)

108. Plaintiff hereby incorporates the preceding paragraphs as if fully restated

herein and specifically paragraphs 23 through 29, and 41 through 46.

109. Defendant White is a representative/management employee of Defendant

US Treasury and in all matters stated herein acted under color of state law.

110. Mr. Coleman is a member of a protected class with respect to his

documented disabilities (See paragraphs 12 through 14).

111. On April 6, 2023, the Plaintiff fell ill and requested leave under the Family

Medical Leave Act of 1993 ("FMLA"), in accordance to US Department of the Treasury

FMLA policy, and left the workplace.

112. On April 7, 2023, the Plaintiff received an email message from Defendant

White wherein Defendant White issued a clear threat to Mr. Coleman stating, "Mr. Coleman I just wanted to make you aware for the future. When you submit an OPM 71 for approval you can not leave until approved or you will be charged AWOL."

113.  The threatened charge of AWOL (Absent Without Leave) is a misconduct charge with penalties up to and including termination of employment.  The threat by Defendant White was without basis or precedent as the FMLA policy clearly states that, "An employee must invoke entitlement to FMLA by notifying the Employer by either written, oral or electronic means that they intend to take FMLA leave (e.g., employees may invoke their entitlement to FMLA by email)."

114.  The Plaintiff has invoked his right to entitlement under FMLA for many years, including other employer before he began work with the IRS, and has never been threatened with disciplinary actions for not seeking the special and extraneous permission by an individual operating outside of FMLA policy.

115.  The threat by Defendant White was clear and horrifying to the Plaintiff.  The threat was offensive to the Plaintiff as it would be also to other members of the protected class utilizing FMLA rights in the mitigation of illness and disability.  The threat was directed at Mr. Coleman to harass him for exercising his FMLA rights.  The threat was to intimidate the Plaintiff in the workplace, it was harmful and has a chilling affect against the Plaintiff as well as other disabled persons.

116.  As a direct or proximate cause of the actions of Defendants US Treasury and White, the Plaintiff was placed under an unreasonable fear and dread of having his employment with Defendant US Treasury terminated and has suffered humiliation, embarrassment, and mental anguish.

-24-

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Coleman prays that this Court:

A.  Grant Injunctive Relief by ordering that the misconduct report and negative information entered into the Plaintiff's Employee Personnel File on or about August 24, 2023, by Defendant Ridgell, be permanently removed.

B.  Enter judgment in favor of Mr. Coleman and against the Defendants for violations of Mr. Coleman's Rights under Title VII, Sections 1983 and 1985 of 42 U.S.C.;

C.  Declare that the actions of the Defendants constituted unlawful violation of the Plaintiff's rights under the United States Constitution;

D.  Award Mr. Coleman compensatory damages, including, but not limited to, lost wages, benefits, and medical care in the amount of one million two-hundred thousand dollars ($1,200,000.00) for pain and suffering and damages for his emotional distress;

E.  Award Mr. Coleman punitive damages in the amount of twenty-six million dollars ($26,000,000.00) in accordance to Smith v. Wade, 461 US 30 - Supreme Court 1983;

F.  Award Mr. Coleman his costs, attorneys' fees, and non-taxable expenses in this action; and

G.  Grant Mr. Coleman such other and further relief as the Court deems equitable and just.

# EXHIBIT B

**DEPARTMENT OF THE TREASURY FINAL AGENCY DECISION**

In the matter of

Destiny K. Coleman v. Janet L. Yellen, Secretary of the Treasury

TD Case No. IRS-23-1021

This decision concerns the above referenced complaint of discrimination against the Department of the Treasury. This complaint concerns alleged violations of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq, and the Rehabilitation Act of 1973, as amended (Rehab Act), 42 U.S.C. § 12112(a)(2012).

**PROCEDURAL CHRONOLOGY**

| | |
|---|---|
| Alleged discriminatory actions: | August 24, 2023 to November 17, 2023 |
| Counselor contact: | August 30, 2023 |
| Notice of Right to File issued: | November 16, 2023 |
| Notice of Right to File received: | November 16, 2023 |
| Formal complaint filed: | November 29, 2023 |
| Acceptance letter issued: | December 18, 2023 |
| Investigation completed: | April 26, 2024 |
| Distribution of Investigative File (IF): | May 13, 2024 |
| Authority | 29 C.F.R § 1614.110 |

**ISSUE**

Whether Complainant was subjected to discrimination based on race (African American), color (Black), disability, and in retaliation for Complainant's prior protected EEO activity when:

1. On August 24, 2023, Complainant's manager entered a negative entry into Complainant's personnel file and charged Complainant with misconduct.

2. Whether Complainant was subjected to harassment based on race (African American), color (Black), disability, and in retaliation for Complainant's prior protected EEO activity when:

   a. On October 16, 2023, Complainant's acting frontline manager reported to the department manager that Complainant was not doing his job and was delaying receiving calls.

   b. On November 13 and 21, 2023, Complainant's acting frontline manager conducted inaccurate contact monitors on Complainant's calls.

    c. On November 17, 2023, Complainant's acting frontline manager directed
       Complainant to revise his time reporting in a way that would misrepresent
       Complainant's actual time worked contrary to IRS policy.

## BACKGROUND

Complainant was employed as a Contact Representative, GS-8, Data
Scientist/Statistician, GS-13, Denver Automated Collection System (ACS), Small
Business/Self-Employed Division (SB/SE), with a Post of Duty (POD) in Denver,
Colorado. Complainant stated he is disabled due to medical conditions of degenerative
arthritis of the lumbar spine and degenerative disc disease, beginning in June 2014. He
alleged retaliation based on his requests for accommodation on May 4, 2022, and on a
prior EEO complaint filed on April 18, 2023 (No. IRS-23-0596). He alleged S2 and S3
were aware of his prior accommodation request and EEO complaint. IF at 109-121.

S1 was employed as Supervisory Contact Representative, Denver's ACS SB/SE, during
the relevant timeframe. S1 stated she was Complainant's frontline manager. S1
asserted that she was not aware of Complainant's race, color, disability, or protected
activity. However, she received Family Medical and Leave Act (FMLA) paperwork from
Complainant on September 12, 2023, but was not aware of any work limitations or
restrictions. IF at 305-308.

S2 stated he was employed as a Department Manager, IR-962-7, Denver's ACS SB/SE,
reporting to S3 during the time related to the current complaint. S2 stated that he was
not aware of Complainant's race or color at the time of the incidents but learned that
Complainant was Black on or about November 16, 2023. He explained he became
aware of Complainant's medical conditions on October 28, 2022, when Complainant
requested FMLA, but Complainant had no work restrictions because of his conditions.
S2 stated he became aware of Complainant's prior EEO activity on May 4, 2023. He
stated that he is of White race and color. IF at 288-291.

S3 was detailed as Assistant Director for Ogden, Utah Accounts Management division
during the timeframe of the current complaint and served as Program Manager for
Denver SCP after June 2023. S3 stated he was aware of Complainant's race and color,
but not his disability. He asserted he was aware of Complainant's EEO activity but did
not provide a date when he became aware. IF at 325-328.

S4, Program Manager, SB/SE Campus Collections Operations with a POD of Denver,
Colorado during the timeframe of the current complaint. He asserted he was not aware
of Complainant's race, color, or medical conditions and was not aware of any work
limitations. He added that he was made aware of Complainant's prior EEO activity. IF
at 337-339.

*Claim No. 1*

On August 22, 2023, Complainant submitted a rebuttal to S2, in disagreement with a Contact Monitor ("review")[1] he received the day prior from the Monitor at the time (M1[2]). In his rebuttal, Complainant asserted that the errors S1 noted were not accurate and she refused to listen to his reasoning. Complainant added that S1 "doesn't care enough to conduct herself professionally in this regard." IF at 154-157, 161.

On August 24, 2023, S2 responded to Complainant's rebuttal by affirming the observations made by S1 and providing detailed explanations. In addition, S2 included an Employee Performance Folder Record (Form 6067) with negative information, in response to the inappropriate personal comments about S1 made by Complainant in the rebuttal. The narrative of the Form 6067 stated that Complainant's observations of S1 were "irrelevant" to the rebuttal and were "inappropriate and derogatory" statement to make about the monitor of the review. In addition, the narrative stated that Complainant was not "in a position to provide and opinion" on what a monitor takes into considerations when performing the reviews. IF at 14, 165-166.

Complainant stated that after receiving the review, he contacted S1, via Teams messaging, and agreed with her observations in part, and disagreed in part. Complainant stated that S1 "could not substantiate all of the errors" she noted and ultimately told him that if he disagreed, he could submit a rebuttal. Complainant agreed that a rebuttal was his next procedural step and submitted one to S2. IF at 118.

Complainant asserted that S2 adding the Form 6067 amounted to a racist and illegal violation of his constitutional rights of free speech. Complainant stated that the misconduct S2 accused him of was essentially being charged with being Black and daring to "open his mouth." Complainant added that there is no IRS policy that he violated by making the comments he did. Complainant asserted that telling him he did not have the right to an opinion was the same as calling him the "n-word." IF at 118.

Complainant asserted that this incident made him feel worthless, because no matter what he did, the color of his skin would always dictate how he would be treated. Complainant contends that he was subjected to racial microaggressions or dog whistles. Complainant further asserted his disability was a factor in this claim because he had received similar negative entries in his personnel file related to his disabilities. He asserted retaliation was a factor in this claim because his prior EEO complaint also involved filing negative entries against him. IF at 115-121.

S2 stated he did not charge Complainant with misconduct and that the Form 6067 is not a "conduct" form. S2 explained that the Form 6067 records incidents and, in this case, was meant to document Complainant's unprofessional and derogatory comments in the rebuttal Complainant submitted. S2 stated that in a follow up conversation with

---

[1] "Contact Monitor" is referencing a single case evaluative Review Feedback Report, dated August 21, 2023, and conducted pursuant to the Embedded Quality Review System (EQRS).
[2] M1 was the individual conducting the contact monitors and at some point, became Complainant's frontine supervisor. IF at 102.

Complainant, he continued to make "unprofessional remarks" about S1. S2 added that if an employee disagrees with an IRM, they can issue a rebuttal, but their rebuttal will not cause the initial monitor report to be removed. IF at 14, 293-296.

S3, Assistant Director (former detail), stated he received an email from Complainant asserting S2 had incorrectly provided him with a Form 6067 with negative information. He stated that he became aware of Complainant's allegation in July 2023 upon his return from an 11-month detail. S3 determined that based on his review, the Contact Monitor's assessment was accurate. S3 stated that he determined that management acted appropriate throughout these interactions. IF at 328-332.

In a rebuttal affidavit, Complainant maintained that the comments he made in the rebuttal at issue were not personal but rather described what he observed to be unprofessional conduct by a manager. He took issue with S2's assertion that the documented negative information was not asserting misconduct, noting placement of the document in his personnel file. Complainant added that S2 and S3 conspired to falsely charge him with misconduct and S3 referenced no policy when sustaining S2's actions. IF at 215-217.

*Claim No. 2(a)*

On October 16, 2023, S1 sent Complainant an email regarding her perception that he was not adhering to his schedule, and cc'd S4. S1 stated that it was her responsibility to inform S4 of her observations and S4 did not respond or take any actions. She recalls that Complainant disagreed with the observation. IF at 181, 308-311, 340-341.

Complainant asserted that he was in "ready" mode and was adhering to his schedule. He stated that he does not know what led S1 to include S4 on message and it was intended to embarrass and harass him. Complainant stated that he believed S1 was "doing as she was instructed to do" in furtherance of harassment by "upper management." Complainant asserted that as a result of S1's report, S4 directed him to read and reply to email messages during his break and lunch times; however, both S1 and S4 stated that S4 did not respond and took no action related to the email. IF at 124, 129, 181, 308-311.

*Claim No. 2(b)*

Complainant stated on November 13 and 21, 2023, S1 assigned him errors per Contact Monitor reports ("review"). Complainant asserted that he does not necessarily think that the notation of errors was inaccurate, but he believes the reviews were "assigned in error," because he received each review after coming back from Family and Medical Leave Act (FMLA) leave. On November 29, 2023, Complainant submitted a rebuttal to S4, regarding the November 21, 2023 review. He explained he requested a screen shot of the calls that were monitored on November 13, 2023, but it was never provided, so he could not provide a full rebuttal. He alleged disability discrimination because each review was presented to him the day after he returned to work from FMLA leave

4

for doctor appointments, which he believes may have instigated the reviews.  IF at 131-132, 134.

The record contains the November 21, 2023, review in which S1 provided specific sections of the policy manual, due to an erroneous extension Complainant offered to payment on payroll taxes when balances were due.  Complainant provided a rebuttal on November 22, 2023, contending that the manual justified his actions and requested she remove the error.  S1 denied his request and clarified the policy.  Complainant asked for more time to write a rebuttal and escalate to S4.  S4 granted Complainant more time to rebut the reviews.  On November 29, 2023, Complainant reiterated his rebuttal for the November 21st review and added a rebuttal for the November 13th review.  IF at 203-204.

S1 stated that she is required to perform reviews on two calls, per month, for each employee.  She stated that the call she reviewed on November 13th was conducted on November 9th and the one she reviewed on November 21st was conducted on November 20th.  S1 stated that Complainant's FMLA use was not a factor in the fact that she conducted the reviews or when he received them.  She added that the reviews were accurate, and Complainant is aware of the policy that his calls are reviewed twice a month.  In addition, S1 stated that Complainant requested a screenshot of a call that she did not review, and she made him aware that she was not able to provide it. IF at 202-204, 312-314.  Complainant acknowledged S1's statement that she received the monitored calls on November 9 and 20, but noted she prepared the reviews when he was out of the office.  She asserted that Complainant requested only monitored calls and he disagreed with S1's assertion that he requested calls that were not reviewed.  In addition, he asserted that he was not provided an opportunity to rebut the reviews.  IF at 257.

S4 stated that Complainant emailed him on November 24, 2023, to state S1 was treating him unfairly when monitoring his calls.  S4 stated he attempted to schedule a meeting with Complainant, on November 28, 2024, but Complainant went home on leave.  IF at 342.

The 2022 National Agreement Article 12.9 states evaluative recommendations will be furnished to an employee within 15 workdays of the time the supervisor becomes aware of the event it addresses.  Evaluative recordation arising from monitored contacts or contact recordings will be the written feedback provided by the Employer, and the employee may listen to the recording and rebut in writing.  In the event the evaluative recordation shows the manager found fault with a recorded conversation, the manager will provide a screen shot of all calls that were reviewed but not evaluated on that day. IF at 207.

*Claim No. 2(c)*

On November 17, 2023, Complainant's sent S1 an email, which was titled "Slippage," detailing S1's request that he enter time into the time and attendance system (SETR) at

the beginning and end of each shift.  Complainant asserted that he had never heard of the requirement and asked for documentation to confirm the existence of the requirement.  S1 cc'd S4 and responded with the General Service Administration (GSA) police stating that employees are allowed eighteen (18) minutes each day for "cleanup etc."  Complainant responded asserting that he had never been asked to do anything like this before and disagreed with the instruction.  In addition, Complainant reiterated his request for the November 13, 2023, monitored call.  S4 concluded the email thread by instructing Complainant to follow S1's instructions and to return to the phones.  He suggested that Complainant respond to the emails during his lunch or while on break.  IF at 174-175, 278-279, 317-318.  Complainant asserted that this instructions was S1's attempt to set him up for a negative entry in his personnel file by having him enter the wrong code into SETR.  IF at 135-138, 253-254.

IRM 1.4.18.9.3.7, "End of Day Procedures" provides managers will allow assistors to sign off . . . up to 12 minutes prior to the end of their shift to conduct end-of-the-day activities.  IF at 151.

## APPLICABLE LAW

### Disparate Treatment

This case involves an allegation of disparate treatment, that is, that the Agency treated the complainant less favorably than others because of the complainant's membership in protected groups.[3]  *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977).  For a complainant to prevail, they must first establish a prima facie[4] case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a factor in the adverse employment action.  *See McDonnell Douglas*, 411 U.S. at 802; *See also Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978).  Once the complainant has established a prima facie case, the burden then shifts to the Agency to articulate a legitimate, nondiscriminatory reason for its actions.  *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  The Agency's burden is not one of persuasion, which always remains with Complainant, but rather a burden of production to "clearly set forth, through the introduction of admissible evidence, the reasons for [their employment decisions]."  *Burdine*, 450 U.S. at 254-56.  The responsible management officials' burden is met by proffering evidence that raises a genuine issue of fact as to whether it discriminated against Complainant; thus, dispelling the inference of discrimination raised by the prima facie case.  *Burdine*, 450 U.S. at 254.  If the Agency articulates a legitimate, nondiscriminatory reason for its actions, the burden reverts back to the complainant to demonstrate by a preponderance of the evidence

---

[3] Disparate treatment/discrimination analysis applies to clearly defined discrete acts of discrimination in relation to "terms conditions or privilege of employment for which there is a remedy."  *See Diaz v. Dep't of Air Force*, Appeal No. 01932839 (April 21, 1994); *see also Cobb v. Department of the Treasury*, EEOC Request No. 05970077 (March 13, 1997).

[4] The term "prima facie" is a Latin phrase meaning based on first impression or accepted as correct until proven otherwise.

that the Agency's reason(s) for its action was a pretext for discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).  Preponderant evidence is that degree of relevant evidence which a reasonable mind, considering the record, might accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.  A complainant can establish pretext either directly, by showing a discriminatory reason more likely motivated management, or indirectly, by showing that the agency's proffered explanation is unworthy of credence.  *See Burdine*, 450 U.S. at 256; *See also Complainant v. Department of Veterans of Affairs*, Appeal No. 2022003026 (January 31, 2023).

Disability Discrimination

The burden of proof in a case under the Rehabilitation Act of 1973 (hereinafter, Rehabilitation Act) is patterned after that required under Title VII law, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-05 (1973); *Guinn v. Bolger*, 598 F. Supp. 196, 200 (D.D.C. 1984).  To establish a prima facie case of disability discrimination, a complainant must demonstrate that:  1) they had a disability within the meaning of the Rehabilitation Act[5]; 2) they were qualified for the position they held or desired; and 3) they were treated differently from individuals not within their protected group *or the agency failed to make a needed reasonable accommodation*, under circumstances giving rise to an inference of discrimination.  *See Haralsen v. United States Postal Service*, EEOC Appeal No. 01996857 (March 1, 2002).

**Retaliation**

The statutory anti-retaliation provisions prohibit any materially adverse action that is reasonably likely to deter a reasonable employee from engaging in protected activity. *See Burlington N. and Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006); *see also Lindsey v. U.S. Postal Serv.*, EEOC Request No. 05980410 (Nov. 4, 1999).  Typically, the prima facie case of retaliation requires evidence that:  (1) the complainant engaged in EEO protected activity; (2) the employer was aware of the EEO protected activity; (3) the complainant was subsequently subjected to adverse treatment; and (4) a clear nexus exists between the EEO protected activity and the adverse treatment.  *Psak v. Dep't of the Interior*, EEOC Appeal No. 0120110118 (April 18, 2013).  A nexus may be shown by evidence that the adverse treatment followed the protected activity within such a period of time and in such manner that a reprisal motive is inferred.  *See Clay v. Dep't of the Treasury*, EEOC Appeal No. 01A35231 (Jan. 25, 2005).

**Harassment**

Harassment of an employee that would not occur but for the employee's membership in

_____

[5] Under applicable Equal Employment Opportunity Commission (EEOC) regulations, an individual with a disability is defined as one who: 1) has a physical or mental impairment which substantially limits one or more of the person's major life activities; 2) has a record of such impairment; or 3) is regarded as having such impairment. 29 CFR §1630.2(g).

a protected class is unlawful if it is sufficiently patterned or pervasive.[6]  *See EEOC Enforcement Guidance on Harris v. Forklift Systems, Inc.* at 3, 9 (March 8, 1994).  To establish a claim of hostile environment harassment, a complainant must show that:  (1) they  belong to a statutorily protected class; (2) they were subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on their statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the Agency.  *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  *See also*, Enforcement Guidance on *Harris v. Forklift Systems Inc.*, EEOC Notice No. 915.002 (March 8, 1994).

In other words, to prove harassment/hostile work environment claim, a complainant must establish that they were subjected to conduct that was either so severe or so pervasive that a "reasonable person" in the complainant's position would have found the conduct to be hostile or abusive.  The Court noted that such conduct "must be both objectively and subjectively offensive, [such] that a reasonable person would find [the work environment to be] hostile or abusive, and . . . that the victim in fact did perceive to be so."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001).  The complainant must also prove that the conduct was taken because of a protected basis.  The ultimate burden of persuasion that the Agency intentionally harassed the complainant always remains with the complainant.  *See Moody v. Department of Navy*, EEOC Appeal No. 01A61007 (April 26, 2006), *citing Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).  Only if a complainant establishes both of those elements -- hostility and motive -- will the question of Agency liability present itself.  *See Complainant v. Dep't of Justice*, Appeal No. 2023005066 and 2024000935 (December 20, 2023).

## ANALYSIS

**Disparate Treatment and Reprisal**

The established order of analysis in discrimination cases, in which the first step normally consists of determining the existence of a *prima facie* case, need not be followed in all cases.  Where the agency has articulated legitimate, nondiscriminatory reasons for the actions at issue, the factual inquiry can proceed directly to the ultimate issue of whether the complainant has shown by a preponderance of the evidence that the agency's actions were motivated by discrimination.  *See Hernandez v. Department of Transportation*, EEOC Request No. 05900159 (June 28, 1990).  For the reasons set

---

[6] A hostile work environment claim is an amalgamation of incidents that "collectively constitute one unlawful employment practice."  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. at 117 (quotations omitted).

forth below, we find that management has articulated legitimate, nondiscriminatory reasons for the actions at issue.

*Claim No. 1*

S2 explained that his actions were predicated on the content of Complainant's rebuttal to the managerial review of his call performance. S2 asserted, and the record confirms, that Complainant made an unnecessary personal statement about S1's character and motives. S2 determined that S1 was correct in her assessment of Complainant's flawed call and issued a Form 6067 documenting Complainant's inappropriate and unprofessional comments. Additionally, S3 performed the same review of the evidence and concurred with S2 that a Form 6067 was appropriate.

The Commission has consistently held that "as the employer, the Agency has broad discretion to determine how best to manager its operations and may make decisions on any basis except a basis that is unlawful under the discrimination statutes. An employer is entitled to make its own business judgments. The reasonableness of the employer's decision may, of course, be probative of whether it is pretext." Therefore, analysis focuses on "the Agency's motivation, not its business judgment." In short, business decisions are those of the managers who know the needs of their facility and "who are in a better position to make decisions, unless other facts suggest that proscribed considerations of bias entered the decision-making process." *See Complainant v. Dep of Homeland Security,* Appeal No. 2020004593 (July 5, 2022) (citations omitted).

We find that there was a reasonable and legitimate reason for the issued Form 6067. Moreover, Complainant's rebuttal affidavit failed to demonstrate that S2's testimony was unworthy of belief or pretextual. For these reasons, we find that Complainant's claim of disparate treatment fails.

*Claim 2(a)-2(c)*

Complainant alleged that he was harassed when S1 sent him an email implying he was delaying getting on the phones, issued him two unfavorable call reviews, and instructed him to change the way he entered time into SETR.

Complainant has not alleged actions that, even if true, would be so objectively and subjectively offensive, that a reasonable person would find the work environment to be hostile or abusive. Specifically, the incidents alleged are routine interactions and managerial instructions that are neither severe nor pervasive. *See Complainant v. Department of Veterans' Affairs,* EEOC Appeal No. 0120111408 (February 6, 2014) (finding critical statements about a complainant's performance, absent discriminatory intent, are not harassment but rather represent ordinary work-related interactions); *see also Samuel R. v. Dep't of Agriculture,* EEOC Appeal No. 0120160065 (March 23, 2018) (finding no discriminatory harassment where complainant perceived supervisor's communication to be demeaning, belittling for false accusations of incompetence

because complainant and supervisor exhibited mutual lack of respect).  For the reasons stated, Complainant's discriminatory and/or retaliatory harassment claim fails.

## CONCLUSION

This constitutes the final agency decision by the Department of the Treasury on this complaint.  It is the decision of the Department that a finding of no discrimination is appropriate in this matter.  Complainant is not entitled to relief.

Snider Page
Digitally signed by Snider Page
Date: 2024.07.12 18:07:03 -04'00'

Snider Page
Director
Office of Civil Rights and EEO

## NOTICE OF APPEAL RIGHTS

If you are dissatisfied with this decision because the Agency incorrectly depicted the facts or applied the wrong law, you may appeal to the Equal Employment Opportunity Commission's Office of Federal Operations *within 30 calendar days* of the date of your receipt of the Agency's final action, or, if you are represented by an attorney, within 30 calendar days of your attorney's receipt of this action.  If a time period expires on a Saturday, Sunday, or Federal holiday, you may file on the next business day.

### *How to Appeal*

**RECOMMENDED METHOD** – The EEOC strongly encourages federal employees who wish to appeal a final Agency decision to file their appeal online using the **EEOC Public Portal** at https://publicportal.eeoc.gov/.  Please see the **attached document on Electronically Appealing this Agency Decision** for detailed instructions on how to use the EEOC Public Portal to file an electronic appeal.

Individuals who are deaf or hard of hearing can reach the EEOC by videophone at 1-844-234-5122. If you have a disability which prevents you from accessing the Public Portal or you otherwise have difficulty with accessing the portal, please call 1-800-669-4000.

If you choose <u>not</u> to use the EEOC Public Portal, you may mail your written appeal or stating supporting an appeal to the Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 77960, Washington, D.C. 20013-8960.  If your appeal or statement is 10 pages or less, you can also fax it to the Office of Federal Operations at (202) 663-7022.  Finally, you can hand-deliver your appeal to: Equal Employment Opportunity Commission, Office of Federal Operations, 131 M St., N.E. Washington, D.C. 20507.  **If you choose one of these alternative filing options, you should use the attached EEOC Form 573, Notice of Appeal/Petition,** and should indicate what you are appealing.

### *Submitting a Statement or Brief in Support of Your Appeal*

Any supporting statement or brief must be submitted to the EEOC *within 30 calendar days* of the date you filed the appeal.

### *Copying the Agency*

If you use the EEOC Public Portal to file your appeal and to submit a supporting statement or brief, you do <u>not</u> need to separately serve the Agency with a copy.  If you instead mail or fax your appeal filing and supporting statement/brief to the EEOC, you must also submit a copy to the Agency.  The Agency strongly prefers that you use email to send your appeal documentation to EEOCElections@treasury.gov.  If you are unable to use email, you may serve your appeal documentation via mail to the Director, Office of Civil Rights and EEO, Department of the Treasury, 1500 Pennsylvania Ave., NW,

Washington, DC 20220, or via facsimile to (202) 622-0367. <u>The EEOC requires that
when using mail or fax to send your appeal filing and supporting statement to the
EEOC, you must include a statement certifying the date and method by which service
was made to the Agency.</u>

## FILING A CIVIL ACTION

You also have the right to file a civil action in an appropriate United States District Court
within **90 days** after you receive this final decision if you do not appeal to EEOC, or
**within 90 days** after receipt of the EEOC's final decision on appeal.

You may also file a civil action **after 180 days** from the date of filing an appeal with
EEOC if there has been no final decision by EEOC.

If your claim is based on age discrimination, you should seek the advice of an attorney if
you wish to file a civil action after expiration of the time limits noted above. The courts
disagree about when a civil action must be filed and may permit an age discrimination
complaint to be filed two years or more from the date of the alleged discrimination.

You must also comply with the following instructions:

(1) You must name **JANET L. YELLEN, SECRETARY OF THE TREASURY**, as the
defendant. Failure to provide her name and official title may result in dismissal of your
case.

(2) If you decide to file a civil action and if you do not have, or cannot afford, the
services of an attorney, you may request that the Court appoint an attorney to represent
you and that the Court permit you to file the action without payment of fees, costs, or
other security. The grant or denial of the request is within the sole discretion of the
Court. Filing a request for an attorney does not extend the time in which to file a civil
action. Both the request and the civil action must be filed **within 90 days** of the date
you receive the agency or EEOC decision.

# NOTICE OF APPEAL/PETITION
# TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013

**Complainant Information:** (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |

1

| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | _____Yes;  Date Received _____(Remember to attach a copy)<br>_____No<br>_____This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any <u>other</u> administrative or collective bargaining procedures? | _____No<br>_____Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | _____No<br>_____Yes **(Attach a copy of the civil action filed)** |

**NOTICE**: Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| Signature of complainant or complainant's representative: | |
| Date: | |

**EEOC Form 573 REV 1/01**

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE**: EEOC Form 573, Notice of Appeal/Petition, January 2001
2. **AUTHORITY**: 42 U.S.C. § 2000e-16
3. **PRINCIPAL PURPOSE**: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.
4. **ROUTINE USES**: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION**: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

Send your appeal to:

The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

1

**DEPARTMENT OF THE TREASURY**

**OFFICE OF CIVIL RIGHTS AND EEO**

**CERTIFICATE OF SERVICE**

For timeliness purposes, the Office of Civil Rights and EEO, Department of the
Treasury, will presume that the enclosed documents are received immediately upon
successful delivery by email. Please note that whenever possible, this Office will
conduct all correspondence electronically, via email, unless a reasonable
accommodation is requested. On this date, I emailed the final agency decision on the
complaint filed by Destiny Keith Coleman, TD No. IRS-23-1021, to the persons listed
below, by the methods specified. Included with this final decision are Notice of Appeal
Rights, MSPB Form 185, and this Certificate of Service. There are 20 pages total.

# Keiana C. Myers

Digitally signed by Keiana C. Myers
Date: 2024.07.15 08:54:08 -04'00'

_____    _____
EEO Assistant                                                 Date
Department of the Treasury
Office of Civil Rights and EEO
1500 Pennsylvania Ave., NW
Washington, DC 20220
EEOCElections@treasury.gov
Telephone:  202-622-1160


Sent via email to:
4dkcoleman@gmail.com


cc via email to:
Anthony C. Contreras, anthony.c.contreras@irs.gov
Anthony L. Jacobi, EEO Specialist, EDI, IRS, anthony.l.jacobi@irs.gov
Ruth H. Golden, EEO Specialist, EDI, IRS, ruth.h.golden@irs.gov
Stanton.chavers@irs.gov
cc.glsclpdocket@irs.gov

gls.sf.docket@irscounsel.treas.gov

**Electronically Appealing this Agency Decision, Associating an Attorney/Representative and Submitting Documentation Using the EEOC Public Portal**

The decision you have just received may be appealed to the Equal Employment Opportunity Commission (EEOC). As an alternative to mailing in your appeal, you may now file it using EEOC's Public Portal.

<span style="color:red">**WARNING!**</span>

<span style="color:red">**Attorneys and non-legal representatives MUST NOT use the EEOC Public Portal to file appeals on behalf of their clients because the system will incorrectly list the representative as the complainant. Therefore, complainants MUST file appeals themselves through the EEOC Public Portal, regardless of whether they are being represented in their appeal.**</span>

<span style="color:red">**Also, please see the note in red below under #16 to make sure you file your appeal with the correct component/Bureau of the Department, rather than with the Department of the Treasury generally.**</span>

Here are the instructions for filing your appeal in the EEOC Public Portal:

1. The first step is registering for the Public Portal (if you are already registered in the Public Portal, you may skip to #5 below). Go to https://publicportal.eeoc.gov/Portal/Login.aspx, and click on the **Register** link on the upper, right-hand side of the page.



2. Read the EEOC Public Portal's Privacy Policy and click on the **OK** button.

3. Fill out the requested information, being sure to enter the information for the required fields designated by the red asterisk (<span style="color:red">*</span>). Please note that when you enter your Zip Code and press the **Tab** key, your City and State should auto-populate. Once you enter your email address, click the **Tab** key and then select **Validate**. The Portal will then send an email containing a verification code to the email address you entered. Go to that email account, open the email from "U.S. Equal Employment Opportunity Commission," copy or take note of the code, go back to the Create Account page, paste or enter the code in the box provided, and click **Submit**.



4. Enter at least one telephone number, enter a password twice (to confirm), select and provide the answer to two Security Questions, and click **Submit**. You will then be brought back to the Public Portal Home page.

5. Click on the **Filing with EEOC** icon.



Filing with EEOC

6. In the resulting page, click on the circle next to **Federal Government agency that I applied to, work for, or worked for as a federal employee or contractor**, and then click **Next**.

◯ ⬅ Federal Government agency that I applied to, work for, or worked for as a federal employee or contractor

7. Read the information provided and click on any links of interest. When done, click **Next**.

8. In the resulting page, click on the circle next to **File a new appeal**. Then click **Next**.

9. Read the information on the next screen. Then click **Next**.

10. A **Confirmation** pop-up will appear reminding you that the EEOC Public Portal does not permit attorneys or representatives to file an appeal on behalf of a complainant. If you, as complainant, are filing the appeal, click **Yes**. If you are an attorney or representative, click **No** and instead have complainant file on their own behalf, naming you as their attorney or representative.

11. Read the information you will need to provide to the EEOC. Make sure that it is available so that you can answer the next questions. When you have gathered that information, click **Next**.

12. Review the **Information about you** page to ensure that it is correct. Upon confirming the information is accurate, click **Continue**.

13. If you **do not** have an attorney or representative, click on the circle for **No**, and click **Next** [*You may skip to #16 below*]. **IF YOU ARE REPRESENTED BY AN ATTORNEY OR REPRESENTATIVE**, click on the circle for **Yes**, and click **Next**.

14. Fill out the required information designated with a red asterisk (*) (again, when you enter your attorney's/rep's Zip code and hit the **Tab** key, the City and State information will auto-populate), and when complete, click **Next**. The system will send a message to the email address you provided for your attorney/representative asking that they verify that they are representing you.

### Representative Information

(By providing this information you authorize EEOC to verify this person represents you.)

Is this person an attorney?*   ◉ Yes   ◯ No

| | | | |
|---|---|---|---|
| Prefix: | | | |
| First Name:* | Amy | Middle: | |
| Last Name:* | Attorney | Suffix: | Esq. |
| Address(1):* | 123 Lawyer Lane | Address(2) | |
| Country:* | United States of America | Zip Code: | 20036 |
| City | WASHINGTON | State: | District Of Columbia |
| Phone Number: | (202) 555-8000 | *(At least one phone number must be entered)* | |
| Cell Number: | e.g., 1234567890 | Email:* | ether42@netscapezs.com |

[ Next ]   [ Back ]   [ Return Home ]

15. In the resulting screen you can add another attorney/representative as necessary or edit the information of an existing attorney/representative. When complete, click **Next**.

16. On the **Agency Information** page, fill out the required information designated with a red asterisk (*)
(again, when you enter the agency facility's Zip code and click **Tab**, the City and State information will
auto-populate).  <span style="color:red">When selecting the Agency named in your complaint, be sure to select the
appropriate component against which you brought your EEO complaint, as identified by the first
letters of your Agency Complaint number.  I.e., you should select your particular Bureau (e.g., BEP,
BFS, FinCEN, IRS, IRSCC, MINT, OCC, TTB), *not* the Department of the Treasury (unless you work for
Departmental Offices within Treasury).</span>  You can begin typing the agency/component and select it
when it appears, or click on the magnifying glass icon and select the agency/component from the
resulting list.  The **Agency Complaint number** is the number assigned by the agency against which
you filed the complaint – not the EEOC Hearing number.  When complete, click **Next**.

## Agency Information

Agency named in your complaint:*

[ ZZ FEDSEP TEST AGENCY  x ]          🔍

Agency Complaint number:*

EEO-1234

[ Insert ]

Location of duty station or local facility in which the complaint arose:*

| Address1 | Address2 |

| Country/Region* | Zip Code |
| United States of America | 20036 |

| City* | State |
| WASHINGTON | District Of Columbia |

[ Next ]    [ Back ]    [ Return Home ]

17. In the second **Agency Information** page, answer the required information designated with a red
asterisk (*).  If you requested a hearing before an EEOC Administrative Judge (whether/not a hearing
was held), be sure to enter the Hearing Number assigned to your request.  When complete, click
**Submit Appeal**.

18. The EEOC Public Portal will send to the email address you entered into the Public Portal an initial letter
acknowledging your appeal request and providing you with next steps and links to helpful resources.

## How to View Documents and Add Documents to Your Appeal

After electronically filing your appeal, you (and your attorney or representative if you have added them to
your appeal) can then add documents that EEOC can use to determine whether the appeal is appropriate,
and/or that helps support your appeal.

1. While still logged in, or after having again logged in to the Public Portal, click on the **My Cases** icon.



My Cases

2. Click on the link for the Appeal Number for which you are submitting documentation.

3. In the resulting **My Case** page, you can read the current status of your appeal, add or update attorneys/representatives, and, as directed by the information contained in the **My Documents** section, upload or review existing documentation.

4. To review existing documentation, click on the link for the particular file. Once you click **OK** acknowledging that it may take a while to download, you will be prompted to open the file in the appropriate program, usually Adobe Acrobat, or some other PDF reader. Once you click on your preferred program and click **OK**, the document will open for your review. If you wish, you can save the file to your computer. You can do this for any of the files listed in the **My Documents** section.

5. To add documentation to your appeal, e.g., the agency's final decision on your EEO complaint (**adding this document is <u>strongly</u> recommended**), supporting evidence, or (as permitted by EEOC's regulations) a statement or brief in support of your appeal), click on the **Upload** icon.



6. In the resulting window, select from the **Type of Document** drop-down what kind of document you are adding (e.g., "**Appeal**" if you wish to upload the EEOC Form 573 Notice of Appeal/Petition; "**Agency Final Action**" for the agency's decision on your EEO complaint), and then click on the **Attach Document** button. **<u>DO NOT UPLOAD PASSWORD-PROTECTED DOCUMENTS</u>**.

7. You will then be presented with a **File Upload** screen, where you can navigate to where the file you wish to upload is located, select the file, and click **Open**. The file name will then appear in the **Select file to upload** window. Click **Upload**.

8. If the document you uploaded doesn't immediately appear in the list of documents, click once or twice on your browser's **Refresh** icon. ⟳ Then the document will appear in the list.

9. The Public Portal will send you and any attorneys/representatives you have added an email indicating that your document was successfully added to the appellate record.

10. Repeat Steps 5 through 8 for any other documentation you wish to upload. **Rather than submitting multiple, separate documents individually, make every effort to combine your documents into a single file.** For example, if you want to submit a statement in support of your appeal, and your statement refers to exhibits, combine the statement and exhibits into one document, and then submit that one document. Doing so allows for more efficient and effective review of your appeal file. We note that there are multiple smart phone apps available that allow you to "scan" multiple-page documents into a single digital file.

# EXHIBIT C



**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, D.C. 20224**

Small Business/Self-Employed Division

MEMORANDUM FOR JOSHUA BELLER, NTEU CHAPTER 32

FROM:            Frank Tisby

**Frank Tisby Jr.** Digitally signed by Frank Tisby Jr.
Date: 2024.03.14 10:20:15 -06'00'

Program Manager, SB/SE Campus Collections
Kansas City Collections Operations
ACS Remote Denver

SUBJECT:        Step 3 Grievance Response
Grievance –ALERTS G-2024-8295


We met through Teams on February 23, 2024, to discuss a grievance dated December 27, 2023. Also, in attendance was Barbara Collins, Labor and Employee Relations Specialist and the grievant Destiny Coleman.

The subject of the Grievance: "Specifically, but without limitation, NTEU Chapter 32 and Destiny Coleman grieve the violations specified in regard to various privacy, religious liberty, EEO violations. NTEU and Mr. Coleman request a time with management to discuss this in greater detail. NTEU is requesting this grievance be heard at the third step of the process per Art. 41."

The grievance cites, Article 4 Section 1 (2)(9),Article 5, Section7B and refers to the incident as an EEO violation.

NTEU requested the following relief:

a) "That Mr. Coleman receive an apology for the acting department manager's EEO violations.
b) That a notice be placed where all ACS/SEP employees in the Kansas City/Denver region can see them (bulletin boards, break rooms, online pages for the organization) that a manager violated an employee's EEO rights, and they apologize as well as information on what employees can do if they allege a similar violation.
c) That management receive training on FMLA and disability discrimination. As well as how to process FMLA requests and the sensitivity of such requests.
d) That management receive training on "the need to know" and the Privacy Act of 1974 and how it relates to keeping their employee's information private including sensitive address and medical information.
e) That Mr. White be immediately removed from any management role.
f) Attorney fees.
g) Any other remedy deemed appropriate."

1

During the meeting, you read into the record the statements made by the grievant which have been included in this response and will be responded to point by point:

**Paragraph 1:** *"This is my grievance against the actions of the Department Manager, Sidney R. White, in that he, 1.) abused his authority, 2.) violated my right to privacy, and 3.) violated my right to religious freedom. On Saturday, December 23, 2023, I received a piece of personal mail from Mr. White at my home address and, presumably, from his personal mailing address (see Attachment 1). I was shocked in receiving a personal mailing from him specifically because he has been so antagonistic toward me in the workplace; I was expecting some form of additional intimidation or threats. Indeed, at one point, he even threatened me with a charge of AWOL for properly executing my rights under the Family Medical and Leave Act (FMLA) (see Attachment 2).*

**Response regarding paragraph 1;** The manager provided a Christmas card to everyone on the team either in person or by mail in an attempt to be inclusive and treat everyone fairly. This has been done for many years without complaint.  Now that the grievant has indicated that he is not interested in receiving a Christmas card, he will no longer receive one.  This was done on his own time, at his own expense, outside of working hours and I see no violation. However, he has been made aware of your stance and will respect your wishes moving forward. You have failed to provide evidence of "antagonistic" behavior towards you.

Nextly, the manager sent the grievant an email dated April 6, 2023, reminding him of the proper leave procedures. The email states, "Mr. Coleman I just wanted to make you aware for the future. When you submit an OPM 71 for approval you cannot leave until approved, or you will be charged AWOL". This is not a threat. There are proper leave procedures in place that everyone must follow. This email indicates that he tried to remind you of your responsibilities to secure approval for an absence before leaving the workplace. You did not "properly execute my rights under the Family Medical and Leave Act" as it requires you to obtain approval in advance when possible.

**Paragraph 2:** *I say this is a gross abuse of authority because he has no right to misappropriate my personal mailing and residential information in the service of his own personal agenda, Article 4 Section 1 (2)(9) of the National Agreement. Additionally, writing to me on a personal matter not in any way related to my job at the IRS is a violation of my right to privacy, Article 5 Section 7B. Notwithstanding the referenced articles, it just seems like common sense that these types of abuses shouldn't even be happening! He has no right to expropriate my information in the service of some personal jollies or as a form of religious intimidation.*

**Response regarding paragraph 2; Article 4 para (2)** states as follows: *"All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights".* You have failed to provide evidence that you have not been treated fairly or equitably. The manager sent you the same card that was sent to everyone on the team as is his right. There is no evidence of abuse or violation of the preamble.

2

**Article 4 para (9)** states as follows; "*Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences:*

*(a) a violation of any law, rule, or regulation; or*

*(b) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.*" You have failed to provide evidence that management violated this article.

**Article 5 Section 7B** states as follows; "*Managers are expected to respect the privacy of their employees, protect confidential information regarding their employees, and only share such information with individuals with a "need to know."* You have failed to supply evidence that management violated this article. I see no violation.

**Paragraph 3:** *Finally, I am not a person embracing or otherwise affiliated with the Christian Religion and I find it deeply insulting that he would send to me an unsolicited and cartoonish caricature of his Virgin Mary and his Jesus. Last I checked, in the United States of America, I have every right not to be a Christian and I certainly have the right to be protected from having his religious beliefs imposed upon me in the privacy of my own home. I desire that he be made to understand that this is NOT OK and acceptable behavior for a manager within the employ of the Federal Government! I am requesting that Sidney White be Reprimanded in writing and in the strongest terms ordered to **desist immediately any type of covert actions** to violate an employee's home life. Plainly, if the shoe were on the other foot and I acted in this way with other employees or even taxpayers, if I should misuse their personal information in this way "just because" I have access to it, I might even be terminated. Personally, I would never do something so insensitive and potentially malicious. I am also requesting that he be specifically and sternly charged not to use employee personal information in an effort to proselytize employees to conform to his own religious agenda.*"

**Response regarding paragraph 3;** You failed to demonstrate how management attempted to "proselytize" you. You received a Christmas card with well wishes. As stated above you have made your wishes to be removed from the holiday traditions. Management has been advised to refrain from including you in such communications or celebrations moving forward and has agreed to respect your wishes. There has been no violation otherwise.

In regard to the requested remedies:
  a) The employee will not receive an apology from the manager as there is no evidence of a violation.
  b) Management will not post an apology publicly to the Kansas City/Denver region as there is no evidence of a violation.
  c) Management believes the manager already is aware of his knowledge of FMLA, therefore, no training is required, nor was there any evidence of a violation.
  d) Management believes the manager is aware of the Privacy Act of 1974, therefore, no training is required, nor is there any evidence of a violation.
  e) The manager will not be removed from his managerial role.
  f) Attorney fees. (See below)
  g) Any other remedy deemed appropriate. (See below)

I have considered the information presented during our meeting and find no violations.

3

In regard to para f); management cannot grant an unspecified remedy or unspecified cost.
In regard to para g); NTEU cited "Any other remedy deemed appropriate." In order for the
Agency to provide a thorough response, NTEU is contractually required to identify the
specific law, rule or regulation violated. As you failed to specifically identify any other
violations, I consider this violation statement to be moot.

If you are dissatisfied with the decision, you may invoke this matter to binding arbitration,
in accordance with the provisions of the 2022 National Agreement, an appeal must be
sent to the following e-mail address:  *HCO ARBITRATIONS.